## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 25-32456** |
| **RICHARD STEVE MEZA**, *et al.*, | § | |
| | § | **CHAPTER 7** |
| Debtors. | § | |
| | § | |
| **EMERSON** | § | |
| **TRANSPORTATION INC. D/B/A** | § | |
| **STS LOGISTICS, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 25-3620** |
| | § | |
| **RICHARD STEVE MEZA**, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Emerson Transportation Inc. d/b/a STS Logistics, Inc. moves on summary judgment to except a debt from discharge under § 523 of the Bankruptcy Code.   The debt is from a state court judgment finding Richard and Cristina Meza jointly liable to STS Logistics in the amount of $403,316.40.   After the judgment was entered, the Mezas filed bankruptcy to discharge that judgment debt.

For the reasons stated below, the debt is excepted from discharge under § 523(a)(2)(A).

## BACKGROUND

### I.      The events leading to the state court litigation

STS Logistics is a transportation and logistics company that operates nationwide.   Richard Steve Meza was employed at STS

Logistics from 2011 to 2014.  ECF No. 42-1.  During his employment, Mr. Meza entered into a verbal agreement with Ivan Acevedo, owner of STS Logistics, authorizing the use of  STS Logistics's Standard Carrier Alpha Code ("SCAC").  A SCAC is a unique two-to-four-letter code used to identify transportation companies.[1]  The National Motor Freight Traffic Association, Inc. assigned STS Logistics a SCAC after it completed an application and paid a fee.  ECF No. 42-1 at 3.   STS Logistics's assigned SCAC is "SLII".

In 2020, Mr. Meza founded TGZ Freight LLC.  ECF No. 42-2.  In 2022, Ms. Meza founded TGZ Connection LLC.  ECF No. 42-4.

In February 2023, STS Logistics received an invoice from a vendor for chassis usage at Port Houston.  ECF No. 42-1 at 4.  STS Logistics disputed the invoice because it did not operate in Texas.  ECF No. 42-6 at 15. The vendor notified STS Logistics that its SCAC "SLII" was used for the transaction in Port Houston.  ECF No. 42-6 at 14.  STS Logistics then reported the usage of its SCAC to Port Houston authorities.  ECF No. 42-6 at 15.

In March 2023, Port Houston provided STS Logistics the account details for the user of its SCAC.  The user account purported to be associated with Ivan Acevedo, the owner of STS Logistics.  ECF No. 42-6 at 9.  Acevedo denies that the user account, including the email (stslogisticsinc@myyahoo.com) and phone number (3467557238), had any association with STS Logistics.  ECF No. 42-1 at 4.

Port Houston identified that STS Logistics' SCAC was used at its terminals 369 times between October 2022 and March 2023.  ECF No. 42-6 at 2.  Based on photographs, Port Houston identified that the entity responsible for the transactions was TGZ Freight LLC, Mr. Meza's company.  ECF No. 42-6 at 2; 42-7.

---

[1] *What is a SCAC?*, NMFTA, https://help.nmfta.org/hc/enus/articles/36833168171803-What-is-a-SCAC (last visited June 24, 2026)

From March 2023, the trucks using STS Logistics's SCAC were identified as being associated with TGZ Connection LLC. When confronted about this discrepancy, Ms. Meza admitted that the truck moves were by her company, not STS Logistics. ECF No. 42-20 at 3.

In December 2023, STS Logistics received a notice to suspend STS Logistics's interchange agreement due to several unpaid invoices under its SCAC code in the Houston area. ECF No. 42-11 at 2.

In February 2024, STS Logistics received an email from another vendor that one of the vendor's containers had not been returned in the Houston area. ECF No. 42-14 at 5. STS Logistics's SCAC was used for the transaction. In May 2024, Port Houston later confirmed that the trucks associated with the Port Houston transactions belonged to TGZ Freight and TGZ Connection. ECF No. 42-15 at 2.

## II.     The State Court Litigation

In June 2024, STS Logistics initiated a lawsuit against the Mezas based on the aforementioned events in Harris County District Court. ECF No. 42-16. In July 2024, the state court held a temporary injunction hearing, where the Mezas did not appear. STS Logistics was granted a temporary injunction. ECF No. 42-17.

On September 12, 2024, STS Logistics filed a motion for default judgment. ECF No. 42-18. On September 23, 2024, the state court entered its "Final Judgment and Permanent Injunction", holding the Mezas jointly and severally liable to STS Logistics in the amount of $403,316.40. ECF No. 42-18.

On May 2, 2025, the Mezas filed for relief under Chapter 7 of the Bankruptcy Code. Main Case No. 25-32456, ECF No. 1.

### JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper under 28 U.S.C.

§ 1408. The Court has constitutional authority to enter a final order in this adversary proceeding.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists if there is evidence such that a reasonable fact finder "could return a verdict for the nonmoving party." *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the burden of establishing that no genuine issue of material fact exists. *Sossamon v. Lone Star State*, 560 F.3d 316, 326 (5th Cir. 2009) (citing *Condrey v. SunTrust Bank*, 429 F.3d 556, 562 (5th Cir. 2005)). The necessary summary judgment showing depends upon which party will bear the burden of proof at trial. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1077 n.16 (5th Cir. 1994). If the movant establishes "the absence of evidence supporting an essential element of the non-movant's case," the burden shifts to the non-movant to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326 (citing *Condrey*, 429 F.3d at 562).

In ruling on a motion for summary judgment, a court must view the facts and evidence in a light most favorable to the non-moving party. *Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014). However, "[s]ummary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015). The Court need only consider the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Aubrey v. Sch. Bd. Of Lafayette Par.*, 92 F.3d 316, 318 (5th Cir. 1996). A credibility determination is inappropriate at the summary judgment. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).

4 / 10

**DISCUSSION**

STS Logistics argues that the judgment debt is excepted from discharge under §§ 523(a)(2)(A), (a)(4), (a)(6) as a matter of law. STS Logistics must prove each element of a § 523 claim by a preponderance of the evidence. *See In re Smith*, 659 B.R. 500, 507–08 (Bankr. E.D. Tex. 2024). At the summary judgment stage, STS Logistics must demonstrate there is no genuine dispute of material fact on each element of the asserted claims.

## I.  Section 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge debts obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" 11 U.S.C. § 523(a)(2)(A). STS Logistics relies on the specific findings in the state court judgment to establish that the debt was obtained by actual fraud. The Court must first determine whether the state court's findings in the final judgment preclude the litigation of actual fraud for § 523(a)(2)(A) purposes.

Collateral estoppel is applicable in bankruptcy dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). Because the judgment was entered by a Texas court, Texas collateral estoppel rules apply. *See In re Jones*, 655 B.R. 868, 876–77 (Bankr. S.D. Tex. 2023) (citing *Gober v. Terra+Corp. (in re Gober)*, 100 F.3d 1195, 1201 (5th Cir. 1996)). Under Texas law, a party is collaterally estopped from raising an issue when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case. *In re Pancake*, 106 F.3d 1242, 1244 (5th Cir. 1997).

The Fifth Circuit has held that "where the court enters a default judgment **after conducting a hearing or trial** at which the plaintiff meets his evidentiary burden, the issues raised therein are considered fully and fairly litigated for collateral estoppel purposes." *Id.* (emphasis added). Here, there is nothing on the record suggesting that a hearing or trial was held for the default judgment motion. The state court judgment provides:

> After considering the Motion, the default judgment evidence, the pleadings, and the record, the Court has determined that as a matter of law the Motion should be GRANTED.

ECF No. 42-19 at 2. That language is not enough to satisfy the fully and fairly litigated requirement. The findings in the judgment do not control here. The Court must consider the evidence on the summary judgment record and determine whether actual fraud within the meaning of § 523(a)(2)(A) is established.

To establish that a debtor committed actual fraud, a creditor must prove: "(1) the debtor engaged in fraudulent conduct; (2) the debtor undertook such action with wrongful intent; and (3) the creditor sustained a loss as a proximate result." *In re Jenkins*, 607 B.R. 270, 283 (Bankr. N.D. Tex. 2019) (citing *Husky Int'l Electronics Inc. v. Ritz*, 578 U.S. 355 (2016)). Actual fraud does not require a false representation. *See Husky*, 578 U.S. at 362 ("The term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation.").

There is sufficient evidence on the record to establish that the Mezas engaged in actual fraudulent conduct. The Mezas used STS Logistics's SCAC to obtain services in Port Houston for the Mezas' own companies, TGZ Freight and TGZ Connection. Mr. Meza admits that he created a user account with STS Logistics's SCAC for Port Houston activities. ECF No. 41 at 3. The user account purported to belong to Ivan Acevedo, but listed a phone number and email address not associated with STS Logistics. By using STS Logistics's SCAC and by

posing as Acevedo to vendors, Mr. Meza obtained services for TGZ Freight and TGZ Connection.

The Record also establishes that the Mezas' intent was wrongful. *See Auction Credit Enters, LLC v. Desouza (In re Desouza)*, 659 B.R. 288, 296 (Bankr. E.D. Tex. 2024) ("Intent can be inferred from circumstantial evidence."). Mr. Meza, in his own declaration, contends he believed he was authorized to use STS Logistics' SCAC after his employment ended. ECF No. 44 at 12. The undisputed evidence reflects otherwise. If Mr. Meza truly believed he was authorized to use the SCAC for his own business activities, there would be no reason to create a user account purporting to be Acevedo.

The record also reflects Mr. Meza previously experienced the consequences of unauthorized SCAC use. Around April 2022, TGZ Freight's SCAC was used by another logistics company. ECF No. 42-25 at 8. TGZ Freight incurred charges for services due to the unauthorized use of TGZ's SCAC. ECF No. 42-25 at 9. Mr. Meza emailed the terminal to ban "all drivers for Cullinan Global Logistics inc. for misusing TGZ Freight LLC SCAC, TGZT." ECF No. 42-25 at 8. He also demanded that company to pay the invoices. ECF No. 42-25 at 9. Given these undisputed facts, no reasonable factfinder can conclude that Mr. Meza believed he was authorized to hold himself out as STS Logistics and use its SCAC after his employment ended. The circumstantial evidence establishes that Mr. Meza acted with wrongful intent as a matter of law.

For the third prong, the Plaintiff must show that the debtor's fraudulent conduct was the proximate cause of the injury. *See In re Selenberg*, 856 F.3d 393, 398 (5th Cir. 2017). Proximate cause is "largely a question of foreseeability." *Desouza*, 659 B.R. at 296 (quoting *First Nat'l Bank of Omaha v. O'Brien (In re O'Brien)*, 555 B.R. 771, 782–83 (Bankr. D. Kan. 2016)). STS Logistics's injuries include:

- A 10-day closure of STS Logistics's interchanges at Port of Los Angeles and Port of Long Beach due to charges incurred. ECF No. 42-18 at 32.

7 / 10

- Business relationship disruptions with vendors.
- Loss in value of STS Logistics's SCAC.

The evidence reflects a direct connection between the injuries and the Mezas' conduct. Because STS Logistics's SCAC was used to obtain services for TGZ Freight and Connection, vendors charged STS Logistics for these services. Because STS Logistics had multiple unpaid invoices from Mezas' use of the SCAC, STS Logistics faced operational restrictions. The confusion in the use of the SCAC code also disrupted business relationships with STS Logistics's vendors. It was foreseeable that the unauthorized use of another company's SCAC to obtain services would result in wrongfully incurred charges. ECF No. 42-25 at 9. It was also foreseeable that nonpayment of wrongly incurred charges would result in operational restrictions and reputational harm. Mr. Meza, based on his prior experience dealing similar conduct, was fully aware of these consequences. *See* ECF No. 42-25 at 4 ("I just dont want to get suspended from SSL's for not paying charges that are not mine.").

The summary judgment record establishes that STS Logistics's injuries were foreseeable consequences of the Mezas' fraudulent conduct.

The Mezas argue that summary judgment is premature because material disputes remain with respect to the precise calculation of damages. ECF No. 44 at 6. The amount of damages has been determined in the state court judgment. "State court judgments receive the full faith and credit promised by the Constitution and therefore preclude relitigating the judgment in federal court under Constitution, art. IV, § 1 and 28 U.S.C. § 1738, safeguards of efficiency and finality of litigation." *Heckert v. Dotson (In re Heckert)*, 272 F.3d 253, 259 (4th Cir. 2001).

While the bankruptcy court is enabled to determine the dischargeability of debt, full faith and credit requires the court to accept the state court's determination of the debt amount. *See id.*; *In re Bulic*, 997 F.2d 299, 304 (7th Cir. 1993). Therefore, a dispute regarding the

damages amount does not create a fact issue precluding summary judgment. The issue is not the amount of debt. It is whether the debt set by the state court judgment is excepted from discharge under § 523.

Lastly, the Mezas argue that Ms. Meza was not involved with the conduct leading to the judgment debt and her debt should not be excepted under § 523. ECF No. 44 at 6. This argument has been addressed and rejected by the Supreme Court within the context of § 523(a)(2)(A).

In *Bartenwerfer v. Buckley*, the Supreme Court unanimously held that § 523(a)(2)(A) excepts a debt from discharge even when a co-debtor is "largely uninvolved" in the fraudulent conduct. *See* 598 U.S. 69, 72 (2023). The Supreme Court recognized that the text of § 523(a)(2)(A) is written in the passive voice and "does not specify a fraudulent actor." *Id.* at 75. Rather, "[t]he debt must result from someone's fraud, but Congress was 'agnosti[c]' about who committed it." *Id.* The Supreme Court recognized that Congress has "'evidently concluded that the creditors' interest in recovering full payments of debts' obtained by fraud 'outweigh[s] the debtors' interest in a complete fresh start[.]'" *Id.* at 83 (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)).

To be sure, a fair reading of *Bartenwerfer* does not support the broad proposition that all innocent debtors are at risk for losing their discharge on a debt procured by fraud under § 523(a)(2)(A). The "innocent" debtor must still be liable under applicable law. *See id.* at 76 ("[T]he common law of fraud . . . has long maintained that fraud liability is *not* limited to the wrongdoer."). The debtors in *Bartenwerfer* formed a partnership and were liable for partnership debts regardless of the level of involvement. *See id.* at 83–84. The underlying state court judgment held the debtors jointly liable for the debts.

*Bartenwerfer* confirms that the issue of liability is governed by state law. *See id.* at 81–82 ("[Section] 523(a)(2)(A) does not define the scope of one person's liability for another's fraud. . . . That is the function of the underlying law[.]"). Here, the state court judgment found Mr.

9 / 10

Meza and Ms. Meza jointly and severally liable to STS Logistics. There is undisputed evidence of Ms. Meza's involvement in the fraudulent scheme. Ms. Meza formed TGZ Connection. ECF No. 42-4 at 2. TGZ Connection used STS Logistics' SCAC in multiple transactions. ECF No. 42-20. While Ms. Meza may have been less involved in the fraud compared to Mr. Meza, § 523(a)(2)(A) focuses on how the debt arose, and does not distinguish between participants. In any event, (i) Ms. Meza neither appealed nor challenged the state court judgment against her; and (ii) Ms. Meza cannot meaningfully dispute that the debt arose by fraud. *Bartenwerfer* precludes her defense.

STS Logistics has met its burden of meeting the elements of actual fraud for § 523(a)(2)(A) purposes. The judgment debt is excepted from discharge as a matter of law under § 523(a)(2)(A).

Because the judgment debt is excepted from discharge under § 523(a)(2)(A), the Court need not address the other claims under subsections (a)(4) and (a)(6).

### CONCLUSION

A separate judgment will be entered.

SIGNED 06/26/2026

Marvin Isgur
United States Bankruptcy Judge